UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES, | : |
| | : |
| v. | : No. 3:18-CR-216-VLB |
| | : |
| LUIS QUINTANA | : June 24, 2020 |
| Defendant. | : |

**RULING AND ORDER ON MOTION FOR IMMEDIATE RELEASE [ECF NO. 81].**

Before the Court is Luis Quintana's Motion for Compassionate Release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). [ECF No. 81]. Mr. Quintana seeks compassionate release on two grounds: first, his risk of contracting COVID-19 while incarcerated at Wyatt and his unique susceptibility to the virus; and, second, the pandemic has effectively lengthened his imprisonment because he otherwise would have been considered for re-entry services at this point in his sentence, and the absence of those services increases his likelihood of recidivism. *Id.* The Government does not object to this motion. *Id.* Mr. Quintana has additionally submitted a release plan, with which which the government and U.S. probation "are in agreement." [ECF No. 87]. For the reasons set forth below, the Court denies Mr. Quintana's motion.

I.  **Background**

On August 16, 2019, Mr. Quintana pleaded guilty to a one-count Superseding Indictment charging him with Possession of a Firearm and Ammunition by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [ECF No. 61 (Plea Agreement)]. According to the stipulated description of the offense, Mr.

Quintana pointed a loaded firearm at a tow-truck operator who was towing Mr. Quintana's car and repeatedly told the victim to remove his car from the tow truck. *Id.* at 14. The tow truck operator agreed to remove Mr. Quintana's car from the tow truck, and, after Mr. Quintana had moved so that he was 30 feet from the tow truck, the victim's partner called the police. *Ibid.*

On January 8, 2020, the Court sentenced Mr. Quintana to 27 months imprisonment, to be followed by 3 years of supervised release. [ECF No. 79 (Judgment)]. Mr. Quintana has served 20 months of his sentence. [ECF No. 11 (Detention Order)]. After his sentencing, Mr. Quintana was transferred to Wyatt Detention Facility as a "holdover inmate," with the expectation that he would be designated and moved to a federal correctional facility for the remainder of his sentence. Before Mr. Quintana was designated, the Bureau of Prisons slowed inmate acceptance movement because of the pandemic. He is not in BOP custody. *Inmate Locator Service, Register Number: 26045-014,* Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/. The Bureau of Prisons reports that his expected end of sentence release date is August 26, 2020. *Id.*

As of June 15, 2020, 557 detainees are housed at Wyatt, so the facility is at 65% capacity. *In Re: Donald W. Wyatt Detention Center*, No. 1:20-mc-4 (JJN) ("*In re: Wyatt*"), ECF No. 20 at 1 (D.R.I. June 15, 2020). Fifty-seven detainees at Wyatt have tested positive for COVID-19, with 27 active cases, out of 1295 detainees tested. *In re: Wyatt*, ECF No. 15 at 1. Seventeen staff members have also tested positive, of which 6 cases are active. *Id.*

II.     <u>Legal Standard</u>

Under the First Step Act of 2018, federal prisoners may petition courts directly for reduction of their sentences, and judges may grant such requests if "extraordinary and compelling reasons" support reduction. *See* First Step Act of 2018, Section 603(b), Pub. L. 115- 391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)(i)) ("First Step Act"). 18 U.S.C. § 3582(c)(1)(A) now authorizes a court to modify a term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id.* "The defendant bears the burden of showing that she is entitled to a sentence reduction." *United States v. Gagne*, No. 3:18-CR-242 (VLB), 2020 WL 1640152, at *3 (D. Conn. Apr. 2, 2020)

III.  **Analysis**

A. *Exhaustion of Administrative Remedies*

On May 27, 2020, counsel for Mr. Quintana emailed Warden Daniel Martin at Wyatt Detention, requesting that Mr. Quintana be considered for compassionate release or home confinement due to his asthma condition and the fact that he has

served the majority of his sentence. [ECF No. 81-1 (Ex. A: Email to Warden Martin)]. Warden Martin forwarded the request to Chad Fultz, residential reentry manager at the Bureau of Prisons. *Id.* Mr. Fultz responded that Mr. Quintana needed to petition the Court for compassionate release since he was not in the custody of the Bureau of Prisons and therefore was still considered "the responsibility of the United States Marshalls and courts." *Id.* ; *see also Inmate Locator Service, Register Number: 26045-014,* Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (showing Mr. Quintana is "not in BOP custody").

The Court finds that Mr. Quintana's motion is properly before the Court since he has exhausted available appeals of the administrative denial of his request for compassionate release. *See United States v. Jepsen*, No. 3:19-CV-00073(VLB), 2020 WL 1640232, at *2 (D. Conn. Apr. 1, 2020) (finding defendant was "essentially caught in a "Catch-22"; neither the warden at Wyatt nor the BoP will consider his request because of his designation to Wyatt, a non-BoP facility"); *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) ("An inmate ... must exhaust available remedies, but need not exhaust unavailable ones.").

B.  *"Extraordinary and Compelling Reason"*

At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. *See* 28 U.S.C. § 944(t); U.S.S.G. 1B1.13. The U.S. Sentencing Commission has not updated its guidance since the enactment of the First Step Act. *See* U.S.S.G. 1B1.1 (Nov. 1, 2018). The Application Notes to U.S.S.G. § 1B1.13 explain

that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:

> **(A) Medical Condition of the Defendant.--**
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> **[or]**
>
>> (ii) The defendant is--
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**U.S.S.G. 1B1.13, Commentary Application Note 1(A).**

Any "other" "extraordinary and compelling reason" may also justify relief. *Id.* at Commentary Application Note 1(D). This Court and others have recognized that an inmate's especially heightened risk of infection and risk of developing severe complications from COVID-19 based on their medical history may constitute an "extraordinary and compelling" reason to grant compassionate release. *See, e.g. United States v. Sanchez*, No. 18-CR-00140-VLB-11, 2020 WL 1933815, at *5 (D. Conn. Apr. 22, 2020) (granting motion for compassionate release where defendant suffers from a compromised immune system); *Jepsen*, No. 3:19-CV-00073(VLB), 2020 WL 1640232; *see also, Martinez-Brooks v. Easter*, No. 3:20-CV-00569 (MPS),

2020 WL 2405350, at *13 (D. Conn. May 12, 2020) ("…approximately 25 out of 48 COVID-19 related motions for compassionate release have been granted in this District alone since the crisis began.").

Here, the Court finds that Mr. Quintana has not provided an extraordinary and compelling reason for release  Mr. Quintana, who is 28, argues for his release on two grounds: first, that, the pandemic has effectively lengthened his imprisonment because he otherwise would have been considered for re-entry services at this point in his sentence, and the absence of those services increases his likelihood of recidivism; and second,  he is at higher risk of contracting COVID-19 while incarcerated at Wyatt and he is uniquely susceptible to the virus. The Court considers each argument in turn.

The Court first considers Mr. Quintana's argument that his asthma is a medical condition that places him at a higher risk for severe illness from COVID-19. The Centers for Disease Control and Prevent ("CDC") have determined that "people with moderate to severe asthma may be at higher risk of getting very sick from COVID-19." Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19): People Who Need Extra Precautions.[1] Mr. Quintana's medical records and PSR both confirm that he has asthma, but they reflect that he suffers from "well-controlled" "mild intermittent asthma" as opposed to "moderate to severe asthma." *See* [ECF No. 83 at 3 (9/5/2018 Progress Note)] (classifying asthma as "mild intermittent without complication" and "well-controlled")]; *id.* at 4

---

[1] **Available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html**.

(4/18/2018 Progress Note) (same); He is prescribed an albuterol inhaler, and "on occasion will take a puff." *Id.* at 2 (listing prescription); [ECF No. 70 (Pre-Sentence Investigation Report) ¶56].

In light of this record, Mr. Quintana, who is 28, has not demonstrated that his asthma renders him especially vulnerable. [ECF No. 70 at 2]; *see United States v. Harding*, No. 3:14CR226 (MPS), 2020 WL 2988955, at *2 (D. Conn. June 4, 2020) (denying compassionate release to 34 year old man diagnosed with "stable and controlled" "mild intermittent asthma"); *United States v. Belle,* 2020 WL 2129412, at *5 (D. Conn. May 5, 2020) (denying compassionate release to a 26 year old man with asthma for which he is prescribed an albuterol inhaler but who has not suffered "an asthma exacerbation in years"). Therefore, the Court finds that Mr. Quintana has not provided an extraordinary or compelling reason for release on this basis. He has not demonstrated that he is at greater risk of experiencing serious complications if he contracts COVID-19 than other inmates. The simple risk of the coronavirus pandemic in an institutional environment is not an extraordinary and compelling reason warranting release. *See United States v. Adams*, No. 3:16-CR-86-VLB, 2020 WL 3026458, at *1 (D. Conn. June 4, 2020) (denying motion for compassionate release to inmate at a facility with confirmed COVID-19 cases among prisoners and staff); *United States v. Hull*, No. 3:17-CR-132 (SRU), 2020 WL 2475639, at *3 (D. Conn. May 13, 2020) (same).

Next, the Court considers Mr. Quintana's argument that he should be released to a halfway house or home confinement in order to "fulfill[] what the parties and the Court would have reasonably anticipated Mr. Quintana's sentence

to mean at the time of his sentencing." [ECF No. 81 at 6]. Were Mr. Quintana in the Bureau of Prison's custody as expected, 18 U.S.C. 3624(c) would apply to him and he would be considered for community or home confinement:

> (1) The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months….

18 U.S.C. § 3624(c).[2] Mr. Quintana argues that, "but for the pandemic, [he] would have been considered for the reentry services now requested; [he] likely would be receiving those services at a half-way house" as he has completed the majority of his sentence, and "the failure to provide those reentry services increases… the defendant's likelihood of recidivism." [ECF No. 81 at 6].

Under the First Step Act, codified at 28 U.S.C. § 3582(c)(1)(A), the Court has authority to reduce a defendant's term of imprisonment and impose new conditions of release, which may include community confinement. *See id.* ("[T]he court… may "reduce the term of imprisonment (and… impose a term of… supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)"); U.S.S.G. § 5F1.1 ("Community confinement may be imposed as a condition of probation or supervised release.").

---

[2] Mr. Quintana's expected release date of 8/26/2020 does seem to incorporate "credit toward service of sentence for satisfactory behavior." *See* 18 U.S.C. § 3624(b).

Courts have generally declined to grant First Step motions for release to community confinement where an individual is in the Bureau of Prison's custody, in deference to the Bureau of Prison's otherwise exclusive statutory authority to determine where prisoners serve their sentences. *See* 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment."); *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *3 (N.D. Cal. Mar. 25, 2020) (declining to grant First Step motion for release to community confinement); *United States v. Miles*, No. 11 CR. 581 (JFK), 2020 WL 1989290, at *1 n.2 (S.D.N.Y. Apr. 27, 2020) (same); *see also United States v. McMillan*, 741 F. App'x 856, 857 (2d Cir. 2018) (Summary Order) ("After a defendant is sentenced, it falls to BOP, not the district judge, to determine ... a defendant's place of confinement.") (quoting *United States v. Pineyro*, 112 F.3d 43, 45 (2d Cir. 1997)).

Here, Mr. Quintana argues that the "extraordinary and compelling" circumstance is exactly that Mr. Quintana is not in the Bureau of Prison's custody, and so the Bureau of Prisons *cannot* consider him for release to home confinement or community confinement. [ECF No. 81 at 5-6]. The Court is not persuaded.

First, although the Court agrees that Mr. Quintana is not in the custody of the Bureau of Prisons, Mr. Quintana has not shown that the Bureau of Prisons could not consider him for home or community confinement under § 3624(c). The Bureau of Prisons has set his release date, and it appears to take into account "good time" under 18 U.S.C. § 3624(b): 8/26/2020 is 23 months after Mr. Quintana entered custody, approximately 85% of Mr. Quintana's 27 month long sentence. If the Bureau of Prisons can apply § 3624(b) to Mr. Quintana, the Court can see no

reason why the Bureau of Prisons could not also apply § 3624(c) to him. While Mr. Quintana has presented evidence that Chad Fultz, residential reentry manager at the Bureau of Prisons, informed Mr. Quintana that he "would need to petition the court for compassionate release," Mr. Fultz said nothing about home or community confinement under § 3624(c). *See* [ECF No. 81 at Ex. A]. The difference is meaningful: A compassionate release request under § 3582(c)(1)(A) must initially be directed to the "warden of the defendant's facility," so Mr. Quintana's non-designation administratively impedes it. 18 U.S.C. § 3582(c)(1)(A). By contrast, consideration for home or community confinement is by the "Director of the Bureau of Prisons," not by a specific warden, so Mr. Quintana's non-designation does not necessarily administratively impede it. 18 U.S.C. § 3624(c)(1).

Next, although Mr. Quintana asserts that he would "likely" be at a half-way house if not for his unusual status, he does support this assertion. [ECF No. 81 at 6]. He does not detail the factors the Bureau of Prisons would apply, nor why he would qualify for home or community confinement under those factors. *Ibid.*

Third, although Mr. Quintana points to the unique merits of halfway houses in "curtailing the recidivism rates" for individuals like Mr. Quintana who are either "chronically unemployed" or "assaultive offenders." [ECF No. 81 at 7-8], Mr. Quintana does not actually propose being released to a halfway house. Instead, he proposes residing with his mother, with the conditions that he submits to home detention, location monitoring and searches, abstains from unprescribed alcohol and narcotics, and schedules an appointment with an outpatient drug treatment center upon the end of his period of home confinement. [ECF No.87 at 2]. Therefore,

even were he to be released as he proposes, any unique merits of halfway houses would not accrue to him.

Therefore, the Court does not find Mr. Quintana's current incarceration status an independent "extraordinary or compelling reason."

### 18 U.S.C. § 3553(a) factors

Next, granting Mr. Quintana's request for compassionate release is not consistent with the 3553(a) sentencing factors. The factors have not changed and their application to Mr. Quintana has not changed. The Court sentenced Mr. Quintana at the top of the guideline range. Reducing his sentence would not accomplish the "need for the sentence imposed" "to reflect the seriousness of the offense," "protect the public" and "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a).

### Danger to the Community

Finally, the Commission's policy statement provides for granting a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Because Mr. Quintana has not demonstrated "extraordinary and compelling" reasons for a reduction of sentence, the Court only briefly addresses the question of his danger to the community.

The Court sentenced Mr. Quintana to 27 months of imprisonment because Mr. Quintana threatened lethal force against a man who was simply doing his job. This serious offense followed prior serious criminal convictions, including a prior

firearms offense. *See* [ECF No. 70 ¶¶ 34-37]. While incarcerated, Mr. Quintana received tickets for violations of the rules that further demonstrate a need for deterrence. *Id.* In the instant motion, Mr. Quintana describes himself as an "assaultive offender" in need of reentry services to decrease his likelihood of recidivism. [ECF No. 81 at 6, 9]. In light of these points, the Court cannot find that Mr. Quintana is not a danger to the safety of any other person or to the community. This is an independent reason to deny release.

IV. **Conclusion**

For the reasons given, the Court denies Mr. Quintana's motion for compassionate release.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: June 24, 2020